**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MAUREEN KURTEK and** | : | No. 3:04cv2731 |
| **JOSEPH KURTEK, her** | : | |
| **husband,** | : | (Judge Munley) |
|               **Plaintiffs** | : | |
| | : | |
|       **v.** | : | |
| | : | |
| **CAPITAL BLUE CROSS and** | : | |
| **CAPITAL ADVANTAGE** | : | |
| **INSURANCE COMPANY,** | : | |
|               **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court for disposition is the plaintiffs' motion to remand. The matter has been fully briefed and is thus ripe for disposition. For the reasons that follow, the motion will be denied.

**Background**[1]

Beginning in January 2003, Plaintiff Maureen Kurtek was covered by a comprehensive health insurance policy provided through Plaintiff Joseph Kurtek's employment. Defendant Capital Blue Cross provided the insurance, and the benefits were underwritten by Defendant Capital Advantage Insurance Company (hereinafter "defendants" or "Capital").

Plaintiff Maureen Kurtek (hereinafter "plaintiff") was diagnosed with Lupus in 1989. In order to treat the disease, plaintiff began to undergo "IV IG Therapy" in 1998, which was covered under the health insurance contract she had at that time. IV IG Therapy requires a two (2) day inpatient hospital admission

---

[1]These background facts are derived from the plaintiffs' complaint.

and costs approximately $14,000.00. The therapy was too expensive for plaintiff to pay for herself, and she could not obtain it unless it was covered by health insurance.

In January 2003, the new insurance took effect, and plaintiff contacted Defendant Capital to arrange IV IG Therapy. Defendant Capital's representative informed plaintiff that she would have to check with her supervisor about the treatments as they were considered "experimental." The representative told plaintiff that she would get back to her once a decision was made. Subsequently, plaintiff spoke with another representative of the company who assured her that someone was working on the IV IG Therapy issue and would get back to her. Several days later, plaintiff sought to speak to the representative's supervisor, but the supervisor would not talk to her. No one on behalf of the defendants ever responded to her until March 11, 2003.

On March 1, 2003, before the therapy was approved, plaintiff was hospitalized for acute catastrophic antiphospholipid antibody syndrome ("APLS"). While being treated for this condition, plaintiff suffered multiple organ system failures and had only a 5% chance of survival. Plaintiff avers that this condition would have been prevented or dramatically diminished had she received the IV IG Therapy in January. On March 11, 2003, defendants contacted plaintiff to inform her that the IV IG Therapy would be 100 % covered under Defendant Capital's comprehensive health coverage as long as the services were medically necessary.

Because of defendants' delay in coordinating, arranging, directing and paying for the administration of the therapy, plaintiff suffered from acute catastrophic APLS, prolonged hospitalizations, tracheotomy, pulmonary failure, renal failure, sepsis, gangrene, sinus damage, transmetatarsal amputation of the right foot, osteomyelitis, loss of the tips of her index fingers and neuropathy according to the plaintiff. She will require

daily injections of medicine into her stomach, sinus surgery, medical care, attention and monitoring for the remainder of her life.

Based upon these facts, plaintiffs filed the instant four-count lawsuit. The counts allege the following four state law causes of action against the defendants:   1) Negligence in medical judgment when making medical treatment decisions and coordinating and directing medical care in addition to negligence in selecting, hiring, retaining, supervising and training competent people to exercise reasonable medical judgment when carrying out their responsibilities under the insurance coverage; 2) Medical negligence in, *inter alia*, delaying approval of the IV IG therapy; 3) Loss of consortium; and 4) Negligent infliction of emotional distress.

Plaintiffs filed this lawsuit in the Luzerne County Court of Common Pleas on November 17, 2004. On December 17, 2004, defendants filed a notice of removal to this court. The defendants' basis for removal is that this case falls under the civil enforcement provisions of the federal Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a) et seq. Defendants assert that plaintiffs' state law negligence claims are completely preempted by ERISA. Plaintiffs filed a motion to remand on February 18, 2005, bringing the case to its present posture.

Defendants removed this case pursuant to 28 U.S.C. § 1441(a), which provides that a case can be removed to federal court if the United States District Court to which it is removed would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). We have original jurisdiction over cases arising under federal law. 28 U.S.C. § 1331.  Defendants assert that we have jurisdiction as this case arises under

3

ERISA, a federal law.[2]

Plaintiffs argue that their claims are simply state law allegations of medical negligence and corporate negligence that do not involve federal law.  Therefore, federal law is not involved and the case should be remanded.[3]

**Standard of review**

Defendants bear the burden of establishing jurisdiction.  Difelice v. Aetna U.S. Healthcare, 346 F.3d 442, 445 (3d Cir. 2003).  We must accept as true all factual allegations of the complaint and draw all reasonable inferences therefrom. Id.

Generally, under the "well-pleaded complaint" rule, to determine if we, as the District Court, would have had original jurisdiction, we must examine the allegations of the complaint.  Removal is appropriate if the federal cause of action is presented on the face of the complaint.  Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 354 (3d Cir. 1995).  Normally, if federal law is raised only as a defense to a complaint, the case is not removable as the federal law appears not in the complaint, but in response to the complaint.  Id.

An exception to the well-pleaded complaint rule exists where Congress has so completely preempted a particular area of the law that a complaint raising claims associated with that area of the law are necessarily federal in character.  Id.   The United States Supreme Court has held that this "complete preemption" doctrine applies to state law causes of action that fall within the scope of ERISA's civil enforcement provisions.  Id. (citing Metropolitan Life, Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987).  Thus,

---

[2]"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331

[3]The law provides: "If at any time before final judgment it appears that the district court lacks jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

4

we must determine if plaintiffs' state law causes of action fall within ERISA's civil enforcement provisions to determine if removal of the instant case was proper. If we find that plaintiffs' complaint does not fall under ERISA, it will be remanded.

**Discussion**

ERISA's purpose is to "protect. . . the interests of participants in employee benefit plans and their beneficiaries" by providing substantive regulatory requirements for employee benefit plans and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b); Aetna Health Inc. v. Davila, 542 U.S. 200,  - - ; 124 S.Ct. 2488, 2495 (2004). ERISA's goal is to provide a uniform regulatory scheme over employee benefit plans. This goal is furthered by expansive preemption provisions which are intended to ensure that employee benefit plan regulation are "exclusively a federal concern." Id.

ERISA includes a system of procedures for civil enforcement, ERISA § 502(a); 29 U.S.C. § 1132(a). "[C]auses of action within the scope of the civil enforcement provisions of § 502(a) are removable to federal court." Davila, 124 S.Ct. at 2496. Defendants argue that plaintiffs' complaint is removable because the causes of action it asserts fall within the scope of ERISA § 502(a)(1)(B), which provides a party the right to "recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

ERISA completely preempts state law claims that "fit within the scope of ERISA's civil enforcement provisions." Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 354 (3d Cir. 1995). State causes of action that duplicate or fall within the scope of an ERISA § 502(a) remedy are completely preempted

5

and hence removable to federal court." Davila, 124 S.Ct. at 2493 (internal quotation marks omitted).

The Third Circuit Court of Appeals has explained that cases can be broken down into the following two categories: 1) "quality of care" cases, those cases concerning the quality of the benefits received; and 2) "quantum of care" case, those cases asserting that benefits were wrongly withheld or brought to enforce their rights under their plans or clarify their rights to future benefits. Pryzobowski v. U.S. Healthcare, Inc., 245 F.3d 266, 272 (3d Cir. 2001). If a case involves "quality of care," then it is not completely preempted, whereas, if it involves "quantum of care," then it is completely preempted. Id. In other words, if the plaintiff is challenging the administration of or eligibility for benefits, the claims are completely preempted. If the quality of the medical treatment performed is challenged, preemption does not apply. Id. at 273.

Plaintiffs argue that their case involves "quality of care," and therefore, it is not completely preempted by ERISA. We must, therefore, examine the manner in which the courts have applied the quality versus quantum distinction.

In Dukes v. U.S. Healthcare, Inc., the plaintiffs' complaint alleged medical malpractice against an HMO-affiliated hospital and medical personnel. 57 F.3d 350, 358 (3d Cir. 1995). As the complaint alleged that the HMO and its personnel failed to exercise reasonable care in providing actual medical treatment, the case involved quality of care and was not completely preempted. Id.

Likewise, a plaintiffs' claims were not completely preempted where the plaintiffs challenged their HMO's policy of discharging newborn infants within twenty-four hours after their delivery. In re U.S. Healthcare, Inc., 193 F.3d 151 (3d Cir. 1999). The Third Circuit Court of Appeals found that the adoption of this policy was essentially a medical determination that could be subject to a state law medical

6

malpractice action. Id. at 162. In addition, the court held that claims that the HMO negligently selected, trained, and supervised medical personnel dealt with the quality of the care. Id. at 163-64.

The Third Circuit addressed the quality/quantum distinction again in Lazorko v. Pennsylvania Hosp., 237 F.3d 242 (3d Cir. 2000). In that case, the plaintiff alleged that the Defendant HMO imposed financial disincentives that discouraged medical providers from hospitalizing a mentally ill person who later committed suicide. The court decided that this was a "quality of care" case because the denial of the person's request to be hospitalized occurred during his course of treatment, not in the administration of his health care plan generally. Id. at 250. Accordingly, the court found the claims were not completely preempted. Id.

Plaintiffs' position is that their case is very similar to these "quality of care" cases. They assert that they do not allege denial of coverage. Rather, their complaint alleges medical negligence occasioned by the delay in defendants' clinical medical research into IV IG Therapy. This delay was caused by the defendants' prolonged consideration of whether the IV IG therapy is experimental, which is a medical determination, not administration of the plan. They also claim that plaintiff actually looked to the defendants to coordinate and administer the care; therefore, this case is about quality of care not administration of the plan. We disagree and shall address these issues separately.

**1. Delay**

With regard to the allegations of delay, this case is most closely analogous to the Third Circuit case of Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266 (3d Cir. 2001). In Pryzbowski, the plaintiff's doctor determined that she needed back surgery. Plaintiff sought approval for the surgery from her HMO. Id. Approval was eventually provided, but after much delay. Id. The delay in authorization rendered the

surgery ineffectual in alleviating the plaintiff's back pain. Id. at 269-70. Plaintiff brought a state court claim alleging that the HMO was negligent in delaying the authorization of the surgery and in screening, hiring and employing capable and responsible employees. Id. at 270. The defendant HMO removed the case to the United States District Court for the District of New Jersey, the court dismissed the claims against the HMO on the basis that the claims were completely preempted by ERISA. The plaintiff appealed to the Third Circuit. Id.

The Third Circuit discussed the quality versus quantity distinction and explained: "[T]he ultimate distinction to make for purposes of complete preemption is whether the claim challenges the administration of or eligibility for benefits, which falls within the scope of § 502(a) and is completely preempted, or the quality of the medical treatment performed, which may be the subject of a state action." Id. at 273.

The court further explained:

> This court has not had occasion to consider how a claim that the HMO or plan administrator delayed in the approval of benefits should be treated under ERISA. It is evident that a claim alleging that a physician knowingly delayed in performing urgent surgery on a patient whose appendix was about to rupture would relate to the quality of care, and not be subject to removal on the basis of complete preemption. On the other hand, a claim alleging that an HMO declined to approve certain requested medical services or treatment on the ground that they were not covered under the plan would manifestly be one regarding the proper administration of benefits. Such a claim, no matter how couched, is completely preempted and removable on that basis.

Id. at 273 (internal citations omitted).

The relevant inquiry, therefore, is whether the cause of action falls within the scope of the civil enforcement provisions of § 502(a). If it does, then complete preemption applies. Id. The Pryzbowski court reasoned that the delay in that case was caused by the HMO's policy that beneficiary's receive

approval from the HMO if they sought to receive treatment from out-of-network specialists. Accordingly, the court found that the activities fell within the realm of administration of benefits. The court noted that the plaintiff could have attempted to accelerate the approval of the out-of-network specialist by seeking an injunction under § 502(a) to enforce benefits that were due her. Id. see also Davila, at 2497 (citing Pryzbowski with approval).

We find Pryzbowski to be controlling, and plaintiffs' claim that the defendants were negligent in delaying the approval of the IV IG Therapy is completely preempted by ERISA. The requirement in the instant case that the treatment be deemed "non-experimental" before benefits could be approved, is analogous to the requirement in Pryzbowski that treatment from out-of-network specialists must be pre-approved. It is simply administration of the benefits, not providing medical care. As Pryzbowski points out, injunctions can be sought under § 502(a) as a civil enforcement mechanism for benefits under an ERISA plan. Pryzbowski, 245 F.3d at 273; Difelice, 346 F.3d at 449. In the instant case, plaintiffs could have sought such an injunction to hasten the determination of whether benefits would be provided. This case, thus, falls under ERISA and is completely preempted.

As in Pryzbowski, plaintiffs have also asserted that the defendants were negligent by hiring unqualified individuals. Plaintiffs do not assert that these employees were negligent in providing treatment or care. Rather, they were negligent in administering the benefits. Thus, this claim is also completely preempted as it involves the administration of benefits, not providing medical care.

**2. Medical determination**

Plaintiffs also argue that whether the treatment is "experimental" is a medical determination. Because it is a medical determination, state law with regard to medical negligence applies. We disagree.

9

The requirement that treatment be deemed "experimental" or "not experimental" is properly classified as administration of the plan, not as providing healthcare treatment.

Nonetheless, plaintiffs, in fact, do assert in their complaint that the defendants engaged in "medical negligence." See Compl. Ct. II. In ERISA cases, we are not confined to merely accepting the allegations of the complaint as pled. The law provides: "Although ostensibly directed to the provision of medical treatment, a federal court may look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law." Pryzbowski, 245 F.3d at 274. The United States Supreme Court has noted that "distinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would elevate form over substance. . . ." Aetna v. Davila, 542 U.S. 200,  - - ; 124 S.Ct. 2488, 2498 (2004).

As stated above, plaintiffs allege that the determination by the defendants of whether the IV IG Therapy is experimental was a medical determination, and hence subject to state law medical negligence claims. The Third Circuit addressed a similar issue in Difelice v. Aetna U.S. Healthcare, 346 F.3d 442 (3d Cir. 2003). The issue in Difelice was whether the Defendant HMO's determination of whether a procedure is "medically necessary" is preempted by ERISA. The plaintiff had drafted his complaint in such a way as to be assert a claim sounding in state law negligence. Id. at 448. Although the court acknowledged that in determining whether the treatment was medically necessary, the HMO had to use medical judgment, the determination ultimately dealt with eligibility for benefits. The HMO provided no treatment itself, therefore, the claim was completely preempted. Id. at 449.

Similarly, plaintiff uses state law negligence as the basis of her claim in the instant case. But just as the determination of whether a treatment is "medically necessary" in Difelice was deemed administration of

the plan, so too is the determination in the instant case of whether the treatment is experimental. This determination deals solely with eligibility for benefits. Accordingly, plaintiff is challenging the administration of benefits which falls within the scope of § 502(a) and is completely preempted.

### 3. Directing and coordinating medical treatment

Plaintiffs assert that the defendants were charged with "directing and coordinating" the treatments, and that at all times Plaintiff Maureen Kurtek looked to the Defendants for her medical care. Reply Brief at 5. While plaintiff makes this assertion in her briefs, the facts as alleged in the complaint are somewhat different. Plaintiffs allege actions on the part of the defendant that are merely administrating the benefits, rather than providing the actual medical care. Although, the plaintiff never defines exactly what is meant by "directing and coordinating" the treatments, a fair reading of the complaint demonstrates that this merely means contacting a healthcare provider and scheduling an appointment or providing approval for the procedure. While the complaint alleges that defendants were charged with coordinating, arranging and directing the treatment, they are not alleged to have been charged with providing the treatment. Once again, therefore, defendants are allegedly acting in their capacity as administrator of the plan, not as a healthcare provider. Accordingly, plaintiffs' claims of negligence and "medical negligence" are completely preempted by ERISA.

It would be a different case if Plaintiff Maureen Kurtek actually received the medical treatment from the defendant, and the defendant acted negligently. But that is not alleged in the complaint. The sole contact alleged in the complaint between the plaintiff and the defendants is a matter of several telephone calls. Plaintiff was simply attempting to determine through these telephone calls whether her treatment was covered under the insurance. Defendants merely are alleged to have to approve and coordinate the

treatment, which under the law is administering benefits, **not** providing medical treatment. See Pryzbowski, supra.

**Conclusion**

In summary, plaintiffs have attempted to plead and label federal claims in terms of state law. The complaint is written in terms of medical treatment, but the defendants are not in the business of providing medical treatment. They provide benefits to pay for such services, but no allegation appears in the complaint that they actually provide medical care.

As we have federal question jurisdiction over this case, the plaintiffs' motion to remand will be denied. Defendants have filed a motion to dismiss on the basis that the state law claims that the plaintiff has alleged are preempted by ERISA. According to the defendants, the plaintiffs have not asserted any ERISA causes of action, therefore, the case should be dismissed. We agree with the defendants. We shall, however, provide the plaintiffs with thirty (30) days to file an amended complaint to properly plead an ERISA cause of action. If an amended complaint is not filed within that time, we will dismiss this case. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAUREEN KURTEK and** | : | No. 3:04cv2731 |
| **JOSEPH KURTEK, her husband,** | : | |
| | : | **(Judge Munley)** |
|       **Plaintiffs** | : | |
| | : | |
|     v. | : | |
| | : | |
| **CAPITAL BLUE CROSS and** | : | |
| **CAPITAL ADVANTAGE** | : | |
| **INSURANCE COMPANY,** | : | |
|       **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **ORDER**

**AND NOW**, to wit, this 13th day of June 2005, the plaintiffs' motion to remand (Doc. 9) is hereby **DENIED**. Plaintiffs are directed to file an Amended Complaint within thirty (30) days from the date of this order properly asserting an ERISA cause of action, or the defendants' motion to dismiss the complaint will be granted.

                                                                        **BY THE COURT:**

                                                                           **s/ James M. Munley**
                                                                           **JUDGE JAMES M. MUNLEY**
                                                                           **United States District Court**